NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE LOUIS BERGER GROUP INC./BLACK & VTEACH SPECIAL PROJECTS CORP. JOINT VENTURE AND THE LOUIS BERGER GROUP, INC.,**<br><br>**Petitioners,**<br><br>v.<br><br>**SAMWHAN CORPORATION,**<br><br>**Respondent.** | Docket No.: 14-cv-3370<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

  Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11, Petitioners The Louis Berger Group, Inc. and The Louis Berger Group Inc./Black & Veatch Special Projects Corp. Joint Venture ("Louis Berger" or "LBG") filed this Motion to Partially Vacate or Modify the International Arbitration Tribunal (the "Tribunal") Arbitration Award issued on February 28, 2014.  Respondent Samwhan Corporation filed a Cross-Motion to Confirm the Arbitration Award.  For the reasons set forth below, the Petitioner's Motion is **DENIED**, and the Respondent's Cross-Motion to Confirm is **GRANTED**.

I. BACKGROUND

  A. The K-F Road Project and the Parties' Contract

  The Louis Berger Group is a U.S. architectural and engineering firm.  On

1

August 25, 2006, the United States Agency for International Development ("USAID") awarded Louis Berger a contract for the Afghanistan Infrastructure and Rehabilitation Program ("AIRP"). AIRP was an effort to strengthen resistance to the Taliban. On February 1, 2007, USAID awarded Louis Berger Task Order No. 4 under the AIRP contract to manage the reconstruction of the pre-existing 103-kilometer road from Keshim to Faizabad (the "K-F Road") in northeastern Afghanistan.

In February of 2007, Louis Berger issued a request for proposals for the K-F Road construction contract (the "Contract"). Respondent Samwhan Corporation ("Samwhan"), a South Korean engineering and construction firm, submitted the lowest bid, $104,022,000. Louis Berger had estimated that the cost would be only $95 million. Before accepting the bid, Louis Berger circulated an internal memorandum called "Possible Cost Saving Measures Keshim-Faizabad Road Project" (the "Memorandum"). The Memorandum acknowledged that Samwhan's bid was approximately 10% above Louis Berger's estimated cost. The Memorandum went on to recommend a series of changes that would reduce the cost of construction from $9 to $12 million. The Memorandum finally recommended awarding Samwhan the Contract "'in the tender amount' and for value engineering by LBG to achieve cost savings." (Final Award of International Arbitration Tribual ("Award") at ¶ 39).

On April 28, 2007, Louis Berger issued a letter notifying Samwhan of acceptance of its $104 million bid. On May 31, 2007, Louis Berger and Samwhan entered into the Contract, and Louis Berger issued a Notice to Commence. Critically, Louis Berger did not disclose to Samwhan that there were underlying plans to make design changes that would reduce the overall price of the Contract.

### B. Costly Delays

The Contract provided that the K-F Road Project (the "Project") would be completed within 913 days of the issuance of the Notice to Commence, or by November 29, 2009. The Project encountered various issues with the road's design and construction, which led to extension of the Project by more than one year. The delays caused increased costs for Samwhan. Samwhan believed that it was entitled to considerable compensation related to the delays. (Award at ¶ 46).

### C. Contractual Dispute Resolution Procedures

Under the terms of the Contract, all disputes arising under the Contract or in

connection with the Project had to be referred to the Project's Engineer for resolution. A party dissatisfied with the Engineer's disposition of the dispute could file a Notice of Arbitration.

Samwhan submitted four claims to the Engineer during the course of the Project (the "Project Claims"). Project Claims Nos. 2-4 are relevant to this motion. Project Claims Nos. 2-4 claimed additional time and expenses due to various delaying events during Samwhan's performance of the Contract, including approximately 1,400 design changes that Louis Berger made. Upon review, Louis Berger, acting as Engineer, found that certain delaying events, which were the subject of Project Claim No. 2, entitled Samwhan to compensation in the amount of $1,050,051.85. The Engineer denied all the other Project Claims. Samwhan thereafter duly provided notice to Louis Berger of its intent to arbitrate the disputes with respect to the Project Claims.

### D. The Arbitration

On October 20, 2011, Samwhan filed its Notice of Arbitration, seeking $36 million. (*See* Notice of Arbitration at ¶ 6). In the Notice of Arbitration, Samwhan asserted several breaches of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. The "core" of Samwhan's claims were the great number of design changes and contract modifications that Louis Berger implemented during the life of the Project. Louis Berger initiated approximately 1,400 design changes and eight Modifications to the Contract. The changes reduced the overall cost of the Contract from $104 million to $89,319,719.76 and also played a part in making the Project last more than a year longer than originally planned. (Award at ¶ 45).

The Notice of Arbitration noted that Samwhan's disputes with Louis Berger were not limited to the evidence and arguments submitted to the Engineer, nor did the Contract notice any intent to exclude additional evidence or arguments. (Award at ¶ 51).

During the course of discovery, Samwhan discovered that Louis Berger had withheld the substance of the "Possible Cost Savings" Memorandum from Samwhan. Via an expert report dated March 8, 2013, Samwhan put Louis Berger on notice of its intent to seek compensation based upon Louis Berger's failure to disclose the substance of the Memorandum. Louis Berger objected to Samwhan's "new claims" in a May 31, 2013 motion to exclude the expert report.

Louis Berger argued that the Tribunal had no jurisdiction over the "new claims" because Samwhan had not submitted the "new claims" to the Engineer, or in the alternative, that Samwhan had waived these claims via a modification ("Modification No. 8") to the Contract. Modification No. 8 "represented a final adjustment for any and all amounts due" other than the four Project Claims previously submitted to the Engineer.

The Tribunal considered but ultimately rejected Louis Berger's jurisdictional and waiver arguments against the "new claims." The Tribunal's reason for hearing the "new claims" was threefold. First, the Notice of Arbitration noted that Samwhan's disputes with Louis Berger were not limited to the evidence and arguments submitted to the Engineer, nor did the Contract notice any intent to exclude additional evidence or arguments. (Award at ¶ 51). Second, the "new claims" were related to the same facts and circumstances submitted to the Engineer. In fact, the Tribunal noted that some of the "new claims" were substantively the same as Project Claims Nos. 2-4. (Award at ¶¶ 60-61). Third, Samwhan did not knowingly waive the "new claims" via Modification No. 8 because Louis Berger had withheld from Samwhan its underlying plans to reduce the cost of the Project with "value engineering." Thus there was no way Samwhan could have known of the "new claims" without the aid of discovery. (Award at ¶ 66).

A Hearing on the Merits (the "Hearing") took place from July 15, 2013 to July 19, 2013 in Florham Park, New Jersey. (Award at ¶ 25). At the conclusion of the Hearing, Counsel for each Party stated for the record that each Party had been given a full opportunity to present its case and confirmed that neither Party had any issue related to the conduct of the Hearing. (*Id.*).

### E. The Award

On February 28, 2014, the Tribunal issued the Award. The Tribunal awarded Samwhan a total of $5,080,051.85. The Award consists of two parts. First, the Tribunal awarded the $1,050,051.85 to which the Engineer already found that Samwhan was entitled under Project Claim No. 2. Second, the Tribunal awarded $4,030,000 in additional compensation.

The Tribunal awarded the additional compensation pursuant to its finding that Louis Berger, at the time it entered into the Contract with Samwhan, intended to make significant changes to reduce the cost of the Project. The Tribunal found that Louis Berger's failure to disclose these plans to Samwhan was a breach of the duty of good faith and fair dealing, which was implied in the Contract. (Award at ¶ 93).

The Tribunal calculated the $4,030,000 part of the award as follows:

> [T]he Tribunal framed a hypothetical question to the experts who had testified on behalf of both Parties. The experts were first asked to assume that all the information disclosed during the hearings as to LBG's knowledge at the time of Contract execution had been disclosed to Samwhan prior to Contract execution. Under that assumption, the experts were asked to calculate the sum that should have been fairly and competitively added to Samwhan's bid to compensate Samwhan for having to perform the contract under the circumstances known to LBG but undisclosed to Samwhan. . . . [T]he sums of the experts were remarkably close. Samwhan's expert estimated $4.48 million. LBG's expert estimated $3.58 million.

(Award at ¶ 88). Accordingly, the Tribunal awarded $4.03 million, the numerical average of the two sums estimated by the respective experts. (*Id.* at ¶ 88).

## II.   SUBJECT MATTER JURISDICTION

The Court has diversity jurisdiction over this matter. The Louis Berger Group, Inc. is a New Jersey corporation. Black & Veatch Special Projects Corp. is a Missouri Corporation. Samwhan is a South Korean Corporation. This Court has jurisdiction over the subject matter of this Petition pursuant to 28 U.S.C. § 1332(a) because the citizenships of each of the Petitioners are diverse from the citizenship of the Respondent, and the amount in controversy, exclusive of interest and costs, is greater than $75,000.

## III.   LEGAL STANDARD

The relevant provisions of the Federal Arbitration Act, 9 U.S.C. §§ 10(a)(3) and (4), state that a district court may vacate an arbitration award:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

>   (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §§ 10(a)(3) and (4).

Under 9 U.S.C. § 11, the court may modify or correct an award:

>   (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
>   (b) Where the arbitrators have awarded upon a matter not submitted to them . . . .
>
>   (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The grounds for vacateur or modification of an arbitration award are extremely narrow." *Viatech Inc. v. DCS Corp.*, 2014 WL 5089740, at *2 (D.N.J. Oct. 9, 2014). "There is a strong presumption under the [FAA] in favor of enforcing arbitration awards. As such, an award is presumed valid unless it is affirmatively shown to be otherwise . . . ." *Brentwood Med. Associates v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005). Only where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction, may a reviewing court disturb the award. *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (*citing Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)).

Under 9 U.S.C. § 10, a court reviewing an arbitration award only determines whether the parties received a fair and honest hearing on a matter within the arbitrators' authority. *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986). "The court may not take issue with the arbitrators' interpretation of the contract." *Id.* (*citing Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203 n. 4 (1956)). The court should not consider whether the arbitrator committed an error of law. *Id.* "An arbitrator's decision need be neither wise nor internally consistent." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d at 1297. The arbitrator's award is "subject to a standard of only minimal rationality." *Id.* "[T]here must be *absolutely no support at all* in the record justifying the arbitrator's determinations for a court

6

to deny enforcement of an award." *News Am. Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990) (emphasis added).

As long as the arbitrator's award "draws its essence" from the contract and is not merely the arbitrator's own brand of industrial justice, the award is legitimate." *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004) (*citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). If the arbitrator was even arguably applying the contract and acting within the scope of his authority, even a serious error does not warrant overturning the arbitrator's decision. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

The scope of an arbitrator's authority is limited to those issues the parties have agreed to arbitrate. *Mobil Oil Co. v. Independent Oil Workers Union*, 679 F.2d 299, 302 (3d Cir. 1982). With respect to the scope of arbitration, the agreement to arbitrate includes both the contract in which the parties promise to arbitrate and their definition of the issues to be submitted. *Employers Reinsurance Corp. v. Admiral Ins. Co.*, 1990 WL 169756, at *4 (D.N.J. Oct. 30, 1990) (*citing Mobil Oil Co. v. Independent Oil Workers Union*, 679 F.2d at 302; *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986)).

## IV. DISCUSSION

Louis Berger seeks vacateur of the award under 9 U.S.C. §§ 10(a)(3) and (4) or modification of the award under 9 U.S.C. § 11. Specifically, Louis Berger seeks vacateur of the $4.03 million for concealing its plans to make cost-reducing changes. Louis Berger seeks vacateur or modification on the grounds that the Tribunal exceeded its authority by rendering the award on the "new claims." Specifically, Louis Berger alleges that:

> (i) Samwhan failed to comply with the Contract's dispute resolution provisions and there was, therefore, no agreement to arbitrate these disputes;
>
> (ii) the Tribunal deprived Louis Berger of a fundamentally fair hearing because the issue was not submitted to the Tribunal; and
>
> (iii) the Tribunal imposed its own conception of sound policy.

(Louis Berger's Reply Brief, ECF No. 21 at 32-33).  None of these three arguments have any merit.

All three arguments derive from Louis Berger's allegation that Samwhan did not submit the "new claims" to the Engineer or had otherwise waived the "new claims" via Modification No. 8.  Louis Berger made these very same objections to the Tribunal, and the Tribunal determined that Samwhan had properly placed these claims before the Tribunal for adjudication because: 1.) the Notice of Arbitration noted that Samwhan's disputes with Louis Berger were not limited to the evidence and arguments submitted to the Engineer, nor did the contract notice any intent to exclude additional evidence or arguments from arbitration; 2.) the "new claims" related to the same facts and circumstances in Project Claims Nos. 2-4, and in some cases, were substantively identical to Project Claims Nos. 2-4; and 3.) Samwhan could not have known of the non-disclosure of Louis Berger's plans to significantly alter the Project prior to discovery.

Also, the Award noted that the compensation for the "new claims" was still well-below the total compensation that Samwhan sought in the Notice of Arbitration.  Moreover, Louis Berger was aware of the "new claims" well in advance of the Hearing and stated at the Hearing that it had the opportunity to fully and fairly litigate all the issues. (Award at ¶ 25).  Finally, this Court notes that to rule in Louis Berger's favor would mean that Samwhan's proper recourse after discovering Louis Berger's fraudulent concealment would have been to go back to the Engineer and then possibly commence another arbitration – which would be a waste of resources for both parties.  From reading the Contract, this Court is not convinced that the Parties intended such an absurd result.

Louis Berger's final argument, that the Tribunal "imposed its own conception of sound policy," is factually unsupported and legally misguided.  In this argument, Louis Berger draws an unconvincing analogy to *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010).  In *Stolt-Nielsen*, the Supreme Court stated that an arbitration tribunal should not impose its "own conception of sound policy." *Id.* at 663.  However, when the Supreme Court made this statement, it was narrowly and specifically referring to an arbitrator's decision to authorize class action arbitration when the underlying contract did not call for it.  The factual scenario in *Stolt-Nielsen* has no relevance to our bread-and-butter dispute over a construction contract.

In sum, Samwhan clearly submitted the "new claims" to the Tribunal, and the Tribunal acted within the scope of its authority to adjudicate those claims.  It is clear from the Award that Louis Berger had a full and fair opportunity to dispute the "new

8

claims" before the Tribunal.  For these reasons, Louis Berger fails to meet the demanding standard to vacate or modify an arbitration award.

## V. CONCLUSION

For the reasons set forth above, Louis Berger's Motion for Vacateur or Modification is denied. Samwhan's Cross-Motion to Confirm is granted.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 9, 2014**